**PYRAMID CONDOMINIUM ASSOCIATION**

v.

**William MORGAN, et al.**

**Civ. No. Y–84–1719.**

United States District Court, D. Maryland.

April 16, 1985.

John E. Fricker, Fairfax, Va., and Charles E. Rosolio, Towson, Md., for plaintiffs.

Howard G. Goldberg and Ralph L. Arnsdorf, Baltimore, Md., for defendants William Morgan and William Morgan Architects, P.A.

Jay I. Morstein and Deborah L. Robinson, Baltimore, Md., for defendant A.T.E.C. Associates.

James R. Eyler, Baltimore, Md., for defendant Maryland Nat. Bank.

Stephen J. Immelt and V. Charles Rinaudo, Baltimore, Md., for defendant Loyola Federal Sav. and Loan Ass'n.

James A. Rothschild, Baltimore, Md., for defendants Robert E. Scherrer and Scherrer Engineering.

Samuel K. McCune, Pittsburgh, Pa., for defendant AVM Corp. of Maryland, Inc.

Mark P. Friedlander, Jr., Arlington, Va., and Patrick G. Cullen, Baltimore, Md., for defendant Atchison & Keller, Inc.

George P. Adams, Baltimore, Md., for defendant Howard P. Foley Co.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

### I. PROCEDURAL BACKGROUND

This diversity action was brought by the Pyramid Condominium Association Council of Unit Owners ("Pyramid") against William Morgan, William Morgan Architects, P.A. (hereafter referred to collectively as "Morgan"), and A.T.E.C. Associates, Inc. ("ATEC"). The plaintiff seeks money damages for alleged injuries to the common elements and to the air-conditioning system of the Pyramid Condominium located in Ocean City, Maryland. Pyramid also alleges that these injuries were occasioned by the negligence, breach of contract, breach of warranty, fraud, and other acts or omissions of the defendants. Plaintiff has also brought suit in the Circuit Court for Baltimore City, naming Morgan and ATEC as defendants along with six other parties including Loyola Federal Savings and Loan Association ("Loyola"), Maryland National Bank ("Maryland National"), the Farms-Worcester Joint Venture ("Farms"), Scherrer-Baumann Engineering ("Scherrer"), AVM Corporation of Maryland ("AVM"), and Atchison and Keller ("AK"). *Pyramid v. William Morgan, et al.*, Action No. 84-121-028/L-19893. The allegations in the state action are similar to those in the federal complaint even though the federal case names only Morgan and ATEC as defendants.

Defendants Morgan and ATEC subsequently filed third-party complaints for indemnification and contribution against each of the parties sued by the plaintiff in state court, many of whom were not sued by the plaintiff in federal court because of the diversity jurisdictional requirement inherent in 28 U.S.C. § 1332. Morgan's third-party complaint specifically incorporates by reference the allegations of the plaintiff's state declaration. Similarly, defendant ATEC's third-party complaint is accompanied by, and incorporates, the previous pleadings filed in this case.

Specifically, the plaintiff's state complaint alleges that all eight defendants are liable for some negligence, breach of contract, breach of warranty, fraud, strict liability, and misrepresentation in the design, construction, and sale of the Pyramid Condominium complex. Defendants allege in their third-party complaints that the six third-party defendants are liable to them for full indemnification or contribution if the defendants are found to be liable to the plaintiff in this Court.

Two of the third-party defendants, Loyola and Maryland National, have filed motions to dismiss the third-party complaints of Morgan and ATEC. The thrust of these motions to dismiss is that the third-party complaints of the defendants fail to set forth sufficient facts from which a trier of fact could infer liability of the third-party defendants to the third-party plaintiffs, and that the third-party plaintiffs are not entitled to either indemnification or contribution from Loyola or Maryland National because of their "active and/or intentional

misconduct," and because their third-party claims are not derived from any cognizable claim that the plaintiff has against the third-party defendants in this forum.

## II. FACTUAL BACKGROUND

In 1973, the City of Ocean City, Maryland, approved a building permit which allowed Farms-Worchester to begin construction of the Pyramid Condominium complex at 9500 Coastal Highway in Ocean City. Soon thereafter, construction on the complex began with Farms-Worcester as the developer and principal construction contractor. Morgan served as the architect on the project, and ATEC acted as the material and geophysical engineer. Typically, there was both construction financing and "gap" financing for the expected period of time between completion of the construction cycle and the eventual sale of all units in the building. Maryland National provided the construction financing and Loyola provided the "gap" financing.

On May 7, 1975, Loyola purchased the promissory note on the project held by Maryland National. (State Complaint ¶ 4). There is no dispute that the construction cycle for the Pyramid complex had been completed before Loyola purchased the note. The City of Ocean City had issued an occupancy permit on May 5, 1975 (Plaintiff's Exhibit 1) and the engineers retained by Maryland National to inspect the project had issued a report dated May 2, 1975 which certified that Pyramid had been substantially completed in accordance with the project's plans and specifications. (Plaintiff's Exhibit 2). Subsequently, Farms-Worcester, the construction contractor, defaulted on its construction loan; Loyola foreclosed on the note it had purchased from Maryland National and went into possession of the Pyramid Condominium complex. (State Complaint ¶ 15).

Loyola then sold units of the Pyramid Condominium to individual purchasers and transferred ownership of the common elements of the condominium. Control and maintenance of the common elements of the Pyramid Condominium subsequently was assumed by the Pyramid Condominium Association, Council of Unit Owners, the plaintiff in this case. (State Complaint ¶ 16). The plaintiff now alleges that there are numerous defects in the Pyramid building for which the defendants are responsible and about which they had knowledge. These alleged defects give rise to the instant complaint and include: flaking concrete, corrosion of reinforcing rods, roof leaks, settlement cracks, corrosion of windows and handrails, water damage due to excessive intrusion of water through exterior walls, and an air-conditioning system that was improperly designed and installed. (Federal Complaint ¶ 12). Plaintiff also alleges that none of the alleged defects was "open and obvious" upon inspection. (¶ 10).

## III. THE THIRD-PARTY CLAIMS OF DEFENDANTS MORGAN AND ATEC AGAINST THIRD-PARTY DEFENDANTS LOYOLA AND MARYLAND NATIONAL

### A. *The Claims for Indemnification from Loyola*

Both defendants Morgan and ATEC have filed claims for indemnity against Loyola and Maryland National in their third-party complaints. Maryland law recognizes a right to indemnity independent of any contract where the character of one tortfeasor's conduct is significantly different from that of another who is also liable for the same damages. *Blockston v. United States,* 278 F.Supp. 576, 585 (D.Md. 1968); *Gardenvillage Realty v. Russo,* 34 Md.App. 25, 366 A.2d 101 (Md.Ct.Spec.App. 1976). A party may be entitled to receive indemnification where his own conduct, although negligent, is considered to be passive or secondary. In *Blockston,* the district court determined that:

> The area in which a party held liable for negligence may pass that liability on to another negligent party is closely circumscribed. It encompasses a group of special situations and relationships where it has seemed reasonable to impose an ultimate responsibility on a party seeking to

have played the active role in the negligence situation in favor of one who is made answerable to the injured party, but whose part in the event is passive or arises from the effect of public policy, contract, or status.

278 F.Supp. at 585 (quoting *Guarnieri v. Kewanee-Ross Corp.*, 263 F.2d 413 (2d Cir. 1959)).

■ A right to indemnity may arise where one party is vicariously liable for the conduct of another person but did not participate in any way in the actions giving rise to the tort. *See* Prosser and Keeton, Law of Torts § 51, at 341–42 (5th ed. 1984). Also, the Fourth Circuit noted in *Jennings v. United States*, 374 F.2d 983, 987 n. 7 (4th Cir.1967) that:

A right to indemnity is commonly recognized where, although both parties are negligent, the negligence of the indemnitee is not considered as serious as that of the indemnitor; for example, where the indemnitee's negligence is based upon a failure to inspect and thereby discover a defect in an article manufactured by the indemnitor.

*Id.* (citing 3 Moore, *Federal Practice* ¶ 14.11 (2d ed. 1964).

■ Thus, it is abundantly clear that a defendant may seek indemnification only when its liability is passive or secondary, which liability is rooted in the concept of imputed or constructive fault. *Tesch v. United States*, 546 F.Supp. 526, 529 (E.D. Pa.1982). The determination of whether a tortfeasor's negligence is active or passive must be made by referring to the plaintiff's complaint against the defendant seeking to implead the third party. *See id.* If the plaintiff's complaint alleges conduct by the third-party plaintiff that would constitute active negligence, or if it is clear from the circumstances revealed by the plaintiff's complaint that the defendant's (third-party plaintiff) liability would only arise, if at all, from proof of active negligence, there is no basis for an indemnity claim and dismissal of the claim is appropriate. *See id.; Principe v. United States*, 207 F.Supp. 301, 303 (E.D.N.Y.1962).

■ The allegations in Pyramid's state declaration as incorporated in Morgan's third-party complaint as well as the allegations in Pyramid's federal complaint preclude any legitimate indemnity claim by Morgan against Loyola. The plaintiff has not specifically alleged that Morgan is liable vicariously or that Morgan engaged in acts constituting passive negligence only; nor is defendant Morgan situated in the sequence of events in such a way as to allow a trier of fact to conclude that it is liable under any theory other than one of active negligence. Pyramid's complaint alleges that Morgan participated in both the design and construction of the building and as a result had knowledge of the substandard and faulty construction. Thus, a judgment in favor of Pyramid against Morgan on the counts in its complaint involving unintentional acts or omissions would arise only upon proof of active negligence by Morgan.

■ Based on its third-party complaint, there are insufficient facts to support even a minimally legitimate indemnity claim by Morgan against Loyola. Moreover, the Court is unable to foresee the discovery of any evidence or the development of any facts at trial which would establish simultaneously Morgan's liability on the basis of passive negligence and Loyola's liability on the basis of active negligence. Morgan is alleged to have been an indispensable party to and direct participant in, the construction of the Pyramid complex during at least some critical stages of the building project. In contrast, Loyola had no cognizable interest in the Pyramid project while it was under construction. More significantly, even if Loyola were to be found to have engaged in active negligent conduct, Morgan still would not be entitled to indemnification from Loyola on the counts alleging such conduct because a finding of liability against Morgan would necessarily be based on its role as an active and actual tortfeasor for whom indemnity is not available. *Tesch*, 546 F.Supp. at 529. *See also Baltimore and Ohio R.R. Company v. Howard County*, 113 Md. 404, 77 A. 930 (1910); 12

MLE, Indemnity § 6, at 164 (1961). Also, it is widely held that indemnification is not available to intentional or grossly negligent tortfeasors. Prosser, Law of Torts, at 312 (4th ed. 1971). *See* 12 MLE, Indemnity § 6, at 164 (citations omitted). Consequently, indemnification is not available to defendant Morgan from Loyola concerning either the negligence or intentional tort claims made against it by Pyramid.

■ Defendant ATEC's claim for indemnity is equally unavailing. The allegations made against ATEC in Pyramid's federal complaint (which are adopted by ATEC in its third-party complaint) preclude the maintenance of a viable indemnity claim against Loyola by ATEC. In its complaint, Pyramid has not alleged specifically that ATEC engaged in acts constituting only passive negligence nor can such an inference reasonably be drawn from the allegations in the complaint. Pyramid's complaint alleges that ATEC participated directly in the construction of the condominium building including the testing of subsurface conditions and concrete. (Plaintiff's Complaint ¶ 3). If defendant ATEC is liable in any way, it is liable for active negligence or for having committed an intentional tort and therefore may not be indemnified. *Tesch,* 546 F.Supp. at 529; Prosser (4th ed.), at 312. *See. Blockston,* 278 F.Supp. at 585; 12 MLE, Indemnity § 6, at 164 (citing *Baltimore and Ohio R.R. Company,* 113 Md. at 404, 77 A. 930).

■ It is well recognized that pleadings should be construed in the light most favorable to the non-moving party and that all doubts should be resolved in favor of the sufficiency of the complaint when considering a motion to dismiss. *See, e.g., Gardner v. Toilet Goods Association,* 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704 (1967). Nonetheless, defendants' conclusory allegations that they are entitled to indemnity need not be admitted in resolving the outstanding motions to dismiss offered by the third-party defendants here. *See Tamari v. Bache and Co. (Lebanon) S.A.L.,* 565 F.2d 1194, 1198–99 (7th Cir.1977). "Sweeping conclusions cast in the form of factual allegations" need not be accepted for the purpose of establishing the sufficiency of the defendant's third-party claims for indemnification. *See Pauling v. McElroy,* 278 F.2d 252, 253–54 (D.C.Cir.1960). Instead, they must be evaluated in light of the factual allegations and claims that are made. *Wilson v. Lincoln Redevelopment Corporation,* 488 F.2d 339, 341 (8th Cir.1973).

In this case, the facts alleged in the plaintiff's complaint indicate that defendants Morgan and ATEC are liable, if at all, as active and/or intentional tortfeasors for whom indemnification from Loyola is not available. *See, e.g., Tesch,* 546 F.Supp. at 529.

Accordingly, Count I of defendant Morgan's third-party complaint and defendant ATEC's third-party complaint for indemnification against Loyola will be dismissed.

### B. Defendants' Third-Party Claims for Indemnity Against Maryland National

■ Defendants' third-party complaints for indemnification from Maryland National must also be dismissed even though this third-party defendant is not similarly situated to Loyola in some aspects of this litigation. Unlike Loyola, Maryland National is situated in the sequence of events such that it could be held to have been "actively" negligent in discharging its responsibilities as the primary construction lender during the construction phase of the Pyramid project. However, the degree and nature of Maryland National's potential culpability is not dispositive in determining whether or not the defendants are entitled to be indemnified in the event they are found to be liable to Pyramid. The character of the third-party plaintiff's own liability is an equally material issue. As noted earlier, the defendants' liability to the plaintiff is necessarily based on proof of defendants' active negligence or intentionally tortious conduct; thus, defendants are precluded from obtaining indemnification from the third-party defendants, regardless of the nature of the third-party defendants' conduct. Maryland National's potential liability for active negligence and intentional tort does not establish the defendants' right to indemnity in the absence of passive

or secondary negligence on the part of the defendants, although Maryland National's alleged active negligence may preclude it from effectively pursuing an indemnity claim of its own (in a forum where such a claim could properly be raised). *Tesch*, 546 F.Supp. at 529; Prosser (4th ed.), at 312; *see Blockston*, 278 F.Supp. at 585; 12 MLE, Indemnity § 6, at 164 (citing *Baltimore and Ohio R.R. Company*, 113 Md. at 404, 77 A. 930).

After evaluating and reviewing the defendants' indemnity claims in the context of the factual allegations made in this case, *Wilson*, 488 F.2d at 341, it is clear that the Court need not, and indeed, should not accept these claims as sufficient to establish the defendants' right to indemnity in light of the allegations of active negligence and intentional tort made against them by the plaintiff. *Pauling*, 278 F.2d at 253–54. Thus, defendants' third-party claims for indemnification from Maryland National will be dismissed.

### C. *Defendants' Third-Party Claims for Contribution Against Loyola and Maryland National*

 Defendants' third-party claims for contribution against Loyola and Maryland National will be dismissed. In Maryland, a right of contribution exists among tort-feasors under the Uniform Contribution Among Tort-Feasors Act, Md.Ann.Code Art. 50, § 17(a) (1957). It is a derivative right and not an entirely new cause of action. 5A MLE *Contribution* § 4, at 437 (numerous citations omitted); *accord Fischbach and Moore Intern v. Crane Barge R–14*, 476 F.Supp. 282, 287 (D.Md. 1979), *aff'd*, 632 F.2d 1123 (4th Cir.1980) (construing the right of contribution under maritime law). This Court has noted that "any entitlement to contribution which a concurrent wrongdoer may have from an-

other culpable party arises from the duty each of the wrongdoers owes to the injured party, as opposed to the obligation running among themselves." *Id.* at 287. When a plaintiff has no right of action against a third party, there can be no contribution entitling the defendant to join the third party as a defendant under the Uniform Act, notwithstanding the fact that liability under the Act may be joint or several. 5A MLE *Contribution* § 4, at 437.

 This case stands in an unusual and peculiar procedural posture because Pyramid cannot assert any claims directly against Loyola and Maryland National because of the complete diversity jurisdictional requirement and the prohibition against the assertion of pendent party claims in federal diversity cases. *See Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). Consequently, the plaintiff does not have an effective right of action against the third-party defendants in this forum; therefore, the right to contribution which the defendants have asserted clearly is not derivative of any liability Loyola and Maryland National may have to the plaintiff arising from this case. The third-party defendants therefore may not be joined in this action by way of a claim for contribution. Impleader under Rule 14 of the Federal Rules of Civil Procedure is procedural and does not create in itself a substantive right of contribution. *See* 3 Moore, *Federal Practice* ¶ 14.03[1] (1984). Accordingly, defendants' third-party claims for contribution against Loyola and Maryland National will be dismissed.[1]

### D. *Third-Party Plaintiff's Claims With Respect to Punitive Damages*

Additional grounds exist for dismissing the third-party claims of Morgan and ATEC to the extent that they seek contri-

---

1. In its Memorandum in Response to the Third-Party Defendants' Motions to Dismiss, defendant Morgan expresses the concern that it may be collaterally estopped from filing a cross-claim against Loyola and Maryland National in the state action if the third-party defendants' motions to dismiss are granted and Pyramid is able to pursue its state action. Morgan Response Memorandum, p. 5. The Court's narrow hold-

ing here should not bar defendants from pursuing any contribution claims brought in state court on the defendants' own initiative or in the context of a state action reinstigated by the plaintiff. This holding, as it concerns the third-party claims for contribution, is specifically predicated on the fact that the defendants' purported rights to contribution from the third-party defendants are not derived from any right of

bution for punitive damages. Third-party plaintiffs Morgan and ATEC seek indemnification or contribution from Loyola with regard to any punitive damage judgment which may be entered against them in this case. Counts XV and XVI of the plaintiff's complaint request punitive damages for fraud in connection with the failure to disclose defects in the common elements of the Pyramid complex and in the air-conditioning system.

■ Maryland law holds that a defendant against whom punitive damages have been awarded may not seek contribution from other defendants. In *Embrey v. Holly*, 293 Md. 128, 442 A.2d 966 (1982), the Maryland Court of Appeals touched on this issue in its review of a jury verdict for a plaintiff in a defamation action brought against a radio celebrity and his corporate employer. Having found for the plaintiff, the jury awarded punitive damages against both the individual defendant and his corporate employer in differing amounts. On appeal, the corporate employer argued that the trial court had erred in permitting the jury to enter separate punitive damage awards against the defendants and that punitive damages should be subject to the traditional principle of joint and several liability which permits a joint tortfeasor to obtain contribution from co-defendants. The Court of Appeals rejected that argument, holding instead that a jury may apportion punitive damages among multiple defendants.

> Many states, in recognition of these principles, have adopted the rule that punitive damages may be apportioned between wrongdoers either by providing varying amounts of such awards or by levying exemplary damages against some of the defendants but not others. In our view, this is the most sensible approach to the subject, for punitive damages, in order to be fair and effective, must relate to the degree of culpability exhibited by a particular defendant and that party's ability to pay. Punitive damages, in essence, represent a civil fine, and as such, should be imposed on an individual basis.

293 Md. at 141–42, 442 A. 966 (citing *Logan v. State*, 289 Md. 460, 480–87, 425 A.2d 632 (1981). This holding implicitly precludes a claim for contribution in connection with the award of punitive damages.[2]

■ At trial, Morgan and ATEC may attempt to reduce their own exposure to punitive damages, if punitive damages are assessed, by attempting to show that other defendants are more culpable. If such damages are awarded, they will be awarded on an individual basis relating specifically to each defendant's own conduct. Contribution will not be available from any other defendant. For this reason, the third-party plaintiffs' complaint must be dismissed insofar as they seek contribution from the third-party defendants for punitive damages pursuant to Counts XV and XVI of Pyramid's incorporated federal complaint.

### E. Indemnity and Contribution For Breach of Contract

■ The third-party plaintiffs have also been charged with breach of contract in Counts III and IV of the plaintiff's com-

---

action which Pyramid could maintain against Loyola and Maryland National in *this* forum because of the procedural and jurisdictional obstacles which prevent it from asserting any non-federal claims against non-diverse parties.

In addition to its Response to the Third-Party Defendants' Motions to Dismiss, defendant Morgan has moved in the alternative for partial summary judgment to the effect that Loyola and Maryland National are not liable to the plaintiff in this case or in the state case "as a result of any alleged error or omission on their part or on Morgan's part." Morgan's Motion for Partial Summary Judgment, p. 2, ¶ 2. As this opinion has made clear, summary judgment is unneces-

sary with regard to any liability Loyola and Maryland National may have to Pyramid because neither Pyramid or the defendants may maintain claims against the third-party defendants in this forum. Additionally, summary judgment is inappropriate with regard to any issue of ultimate liability raised in the state proceeding which is not properly before this Court for adjudication.

**2.** Any indications contrary to this apportionment rule perceived in the addendum to *Nance v. Gall*, 187 Md. 656, 674–77, 50 A.2d 120 (1946), were expressly disapproved by the *Embrey* court. 293 Md. at 143 n. 17, 442 A.2d 966.

plaint and now seek indemnification or contribution with regard to these claims from the third-party defendants. The Court is unaware of any common law right of indemnity or statutory right of contribution under Maryland law that may be exercised by a defendant found liable for breach of contract in the absence of a material breach of contract by a third party which causes or otherwise occasions the defendant's breach of it's contract with the plaintiff. Accordingly, the third-party complaints concerning claims for breach of contract will be dismissed.